## Case No. 2,956.

### COGGILL et al. v. LAWRENCE.

[1 Blatchf. 602.][1]

Circuit Court, S. D. New York. Oct. Term, 1850.

CUSTOMS DUTIES—"SHEEP-SKINS"—APPRAISE-MENT.

1. Under the tariff act of July 30, 1846 (9 Stat. 42), Buenos Ayres sheep-skins, imported with the wool on, and dried but not dressed, usually invoiced as sheep-skins, and known in commerce by that name, fall within section 3 of that act as a non-enumerated article, and are subject to a duty of 20 per cent. ad valorem.

2. Although the chief value of the sheep-skins is in the wool, and a large proportion of those imported are, after importation, shorn for the wool, yet the well known commercial designation of the article as a whole must govern, and the government cannot appraise the wool and the pelt separately, and charge duty on the former under Schedule C., as "wool, unmanufactured."

3. Such sheep-skins do not fall within Schedule H, under the head of "raw hides and skins of all kinds, whether dried, salted, or pickled," that description referring to a class of articles well known in the trade, and used extensively by manufacturers of leather.

At law. This was an action against [Cornelius W. Lawrence] the collector of the port of New York, to recover back an excess of duties paid by the plaintiffs [Henry Coggill and others] under protest on Buenos Ayres sheep-skins. [The action was brought originally in the superior court of the city of New York, and was from there removed to this court.] The article was imported with the wool on the skin, and was not dressed, being in the same condition in which it was when taken from the animal, except that it was dried. By the instructions of the secretary of the treasury the collector directed the wool and the pelt or skin to be appraised separately, and a duty of 30 per cent. ad valorem was charged on the former, and of 5 per cent. ad valorem on the latter. The importation was under the tariff act of July 30, 1846 (9 Stat. 42). At the trial before Mr. Justice Nelson in May, 1849, it appeared by the evidence, that the article was usually described in invoices and shipped as sheep-skins, and was known in trade and commerce by that designation; that the wool upon the pelt was worth from fourteen to thirty cents a pound, each skin yielding from half a pound to a pound of wool; that the pelt, when shorn, was worth from four to ten cents, and was tanned and used as leather; that some of the skins were sheared, and some were dressed with the wool on and used for mats, military saddles, soles for the inside of shoes, coverings for the cylinders of rice-mills, men's caps, sleigh-robes, &c.; that from 50 to 70 per cent. of those imported were shorn for the wool; and that they were sometimes imported without any wool on them, when they were called bazils or pelts,

and were tanned or salted before being shipped.

The defendant insisted, that the wool upon the skin was "wool, unmanufactured," and chargeable, under Schedule C of the act of 1846, with a duty of 30 per cent. ad valorem, on the ground that the chief value of the article consisted in the unmanufactured wool, the skin being of little value. The plaintiffs claimed, that the article was chargeable with a duty of 5 per cent. ad valorem, under Schedule H, as falling within the designation of "raw hides and skins of all kinds, whether dried, salted, or pickled, not otherwise provided for." The court charged the jury, that the article was chargeable with a duty of 20 per cent. ad valorem, under Schedule E, under the head of "skins of all kinds, not otherwise provided for." The jury accordingly found for the plaintiffs, and a motion was now made for a new trial, on a case.

NELSON, Circuit Justice. The article in question in this case was specifically charged with a duty under the tariff acts of 1828, 1832, and 1842 (4 Stat. 271, § 2; 584, § 2; and 5 Stat. 548, § 1), as "wool imported on the skin;" but the description is omitted in the act of 1846.

It is claimed on the part of the plaintiffs, that it should be ranged under Schedule H in the act of 1846, within the description "raw hides and skins of all kinds, whether dried, salted, or pickled, not otherwise provided for;" while the defendant insists it should be charged under Schedule C, as "wool, unmanufactured."

We are of opinion that it comes within neither description. If it falls under any of the schedules, it would more properly be ranged under Schedule E, within the words "skins of all kinds, not otherwise provided for;" or else it is a non-enumerated article within the third section of the act. It is not very material under which of these provisions it is placed, as the rate of duty is the same.

The articles described in Schedule H, under the terms "raw hides and skins of all kinds, whether dried, salted, or pickled," are different from the one in question, if we take the commercial designation. That description refers to a class of articles well known in the trade, and of extensive demand in the market on the part of the manufacturers of leather. It was doubtless for the encouragement of these manufacturers, in part at least, that the low rate of duty was charged.

Neither do we perceive how the article can be separated, as is claimed by the government, and the duty be apportioned upon each of its parts, the same as if they were imported after separation. The article has a well known commercial designation as a whole, which, upon general principles, must govern in rating it as a dutiable article. And besides, the rule of construction that would separate it, and apportion the duties upon its

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

parts, could not be confined to this particular article. "Hair of all kinds, uncleaned and unmanufactured" is chargeable with a duty of ten per cent. ad valorem, under Schedule G; and a large portion of the skins imported are imported with the hair on the skin. The rule would seem to apply equally to this class of articles. The difficulty in ascertaining the dutiable value of each of the parts is also a serious objection to the introduction of the rule.

The omission to charge the duty on the article specifically in the act of 1846, as it was charged in the preceding acts, may have been an oversight; but the natural, if not legal inference, is rather the contrary.

As the article has a fixed designation in trade and commerce, which has not been carried into the enumeration under either of the schedules, we are inclined to think it falls most apropriately within the third section; as a non-enumerated article, and is chargeable with a duty of twenty per cent. ad valorem.

A new trial, therefore, must be denied.

[NOTE. Both parties subsequently moved for costs, and the motions of both were denied. Case No. 2,957.]